**IN THE CIRCUIT COURT OF COOK COUNTY,**
**COUNTY DEPARTMENT, LAW DIVISION**

| | |
|---|---|
| **DR. KEVIN J. NOHELTY,** | ) |
| | ) |
| Plaintiff, | ) Case No.: 12 CH 11421 |
| | ) |
| vs. | ) |
| | ) |
| **LINCOLNWOOD SCHOOL DISTRICT #** | ) |
| | ) |
| **74, SCOTT L. ANDERSON, JOHN P.** | ) |
| | ) |
| **VRANAS, KEVIN DALY and GEORJEAN** | ) |
| | |
| **HLEPAS-NICKELL,** | |
| | |
| Defendants | |

## AMENDED COMPLAINT

Now comes the plaintiff, Dr. Kevin J. Nohelty ("Nohelty"), by and through his attorney, Steven

Glink, and complaining against the defendants, Lincolnwood School District # 74, Scott L.

Anderson, John P. Vranas, Kevin Daly and Georjean Hlepas-Nickell all members of the Board

of Education ("BOE") for Lincolnwood School District # 74 ("the district") and states as

follows:

### THE PARTIES

1. At all times relevant to this complaint, Nohelty was employed by the BOE as the school

   district's Assistant Superintendent of Business.

2. At all times relevant to this complaint, defendants Anderson, Vranas, Daley and Hlepas-

   Nickell were duly elected and/or appointed members of the Lincolnwood School District

   # 74 BOE.

3. At all times relevant to this complaint, Lincolnwood School District # 74 was a body politic operated and organized pursuant to the laws of the State of Illinois and specifically the Illinois School Code.

4. Anderson, Vranas, Daly and Hlepas-Nickell are sued in their individual and official capacities.

5. At all times relevant to this complaint, Nohelty was a resident of Cook County, Illinois.

6. At all times relevant to this complaint, the principal place of business for the Lincolnwood School District # 74 was Cook County, Illinois.

7. On information and belief, all individual defendants are residents of Cook County, Illinois.

## FACTS APPLICABLE TO ALL COUNTS

8. Nohelty had a valid and enforceable one year employment contract with the defendants that employed Nohelty from July 1, 2010 through June 30, 2011 (Attached as exhibit A).

9. Starting in approximately October 2011, the BOE and the Superintendent at that time, Mark Klaisner, came under substantial public scrutiny for questionable spending practices.

10. At all times relevant to this complaint, Nohelty performed his duties properly as required by his employment agreement and met the reasonable expectations of his supervisor, Mark Klaisner (the former superintendent of the district)(a copy of Nohelty's annual performance evaluation, dated January 19, 2012 is attached as exhibit B).

11. Prior to the aforementioned public scrutiny, Nohelty was a political supporter of Klaisner and board members Fourkas, Davros, Frankel and Koder Nohelty had often spoke out in favor of these board members' policies and decisions.

12. Defendants Anderson Vranas, Daly and Hlepas were in the political minority of the board that gave Nohelty his first employment contract as well as his second contract

-2-

(extension). The defendants disliked Nohelty because he was a political supporter of Klaisner, the aforementioned board members and members Ruderman and Perl. Further, defendants simply did not like Nohelty personally.

13. On January 21, 2012, the BOE and Nohelty agreed to a new employment agreement that re-employed Nohelty/ extended Nohelty's employment as the Assistant Superintendent for Business from July 1, 2012 through June 30, 2013 (a copy of said employment agreement is attached hereto as exhibit C).

14. Both the (then) current employment contract as well as the contract extension provided that plaintiff's employment could only be terminated for cause.

15. Cause is defined by law as a substantial deficiency in performance that causes harm to the school, the staff, the students or the community.

16. This public scrutiny led to the resignation of various board members that were political supporters of Nohelty.

17. With the resignation of certain members of the BOE, defendant Anderson became the board president and a new political majority was formed, namely, the individual defendants herein.

18. On or about March 9, 2012, defendant Anderson, as spokesman for the new board majority (the remaining individual defendants) demanded that Nohelty, Klaisner and the other assistant superintendent (Susan Brandt) resign their positions. Klaisner agreed to submit his resignation and Brandt opted to retire under pressure. Nohelty declined because, based upon his recent performance evaluations, he believed that his job performance met the legitimate expectations of his employer AND because he had two valid written employment agreements.

19. Klaisner's resignation was accepted by the BOE on March 27, 2012. On the same date, Brandt retired.

20. Immediately after Nohelty declined to resign, the defendants placed him on an
    unspecified paid administrative leave of absence. No allegations or charges of any
    misconduct were filed or mentioned at that time.

21. At the time that the defendants placed Nohelty on paid administrative leave, there had
    been no complaints about his performance and no complaints about his conduct.

22. On information and belief, the defendants conspired in an executive session board
    meeting to terminate Nohelty's employment despite the fact that there were no
    complaints about his performance and/or conduct. S

23. Specifically, on information and belief, defendants directed their lawyer and/ or the
    interim superintendent to find any basis to terminate Nohelty's employment agreements.

24. On May 29, 2012, two and one-half months after placing Nohelty on a paid
    administrative leave of absence, Interim Superintendent Dr. Kenneth Cull sent Nohelty a
    letter directing Nohelty to meet for the sole purpose of serving "…a bill of particulars
    justifying your dismissal…" on Nohelty (a copy of said letter is attached hereto as exhibit
    D).

25. Nohelty and his counsel met with Cull on May 31, 2012 as directed. At that time,
    Nohelty was served with a Bill of Particulars (a copy of which is attached hereto as
    exhibit E).

26. On or about June 8, 2012, Nohelty was served with an Amended Bill of Particulars
    through his counsel (a copy of which is attached hereto as exhibit F).

27. A pre-termination hearing was held on June 12, 2012.

28. After the pre-termination hearing, the individual defendants voted 4-0 to terminate
    Nohelty's employment for cause (a copy of the Board minutes wherein the defendant
    board members made that vote are attached as exhibit G).

29. On June 12, 2012, the defendants also voted to terminate Nohelty's performance based employment agreement (exhibit C) dated July 1, 2012-June 30, 2013 (see: exhibit G).

30. At the time that Nohelty was served with the Bills of Particulars and had the pre-termination hearing, he had never been reprimanded, warned, questioned or disciplined in any manner by his employer for anything let alone the conduct that was the subject of the original and/or the amended bill of particulars.

31. All of the charges filed by the defendants against Nohelty were false, capricious and did not constitute cause for his termination. Nor did said charges provide any basis to declare Nohelty's contract extension null and void.

## COUNT I-VOILATION OF CIVIL RIGHTS

32. Plaintiff realleges all allegations contained in paragraphs 1-31 above as his allegations for this count.

33. This claim is brought pursuant to 42 USC 1983 as well as provisions of the Federal and State Constitutions.

34. Nohelty had a First Amendment right to support the board members that hired him and approved the contract extending his employment for one year until June 30, 2013.

35. Nohelty had a contractual right to be employed until June 30, 2012 under the original employment agreement.

36. Nohelty had a right to a fair and impartial pre-termination hearing before the BOE.

37. All of these rights were clearly established at the time that all defendants acted in this case.

38. Nohelty had a property right and a legitimate expectation of continued employment until June 30, 2013 via the contract extension that was approved by the previous board majority (see: Parag. 13).

39. The defendants knew that Nohelty was a political supporter of the prior board members.

40. Defendants acted under color of law by using the power conferred upon them as board members by the Illinois School Code.

41. Defendants violated Nohelty's rights under the First and Fourteenth Amendments to the Federal Constitution in one or more of the following ways:

- They used their power to terminate Nohelty's employment even though they knew there was no factual and/or legal basis for the charges against Nohelty;

- They used their powers to terminate/void Nohelty's contract extension even though they knew that there was no factual and legal basis for the charges against Nohelty;

- The pre-termination hearing was a sham as the four defendants had pre-determined to terminate Nohelty's employment and to terminate/void his contract extension no matter what the evidence established;

- The defendants' actions were taken in retaliation for Nohelty's political support of the prior board majority;

- The defendants' actions were based upon their personal animus against Nohelty;

- The defendants conspired with Cull and their lawyer directed Cull to file false charges against Nohelty even though they knew there was no factual and/or legal basis for the charges;

- Defendants prosecuted the false allegations against Nohelty because he refused Anderson's demands to resign from his position

- The defendants acted with malice in prosecuting these charges without probable cause and in terminating Nohelty's employment, current and prospective simply as a means to void an otherwise valid employment contract.

42. As a direct and proximate result of the defendants' conduct, Nohelty lost salary and benefits that he was entitled to under his current and prospective employment.

43. Defendants' conduct violated Nohelty's First Amendment rights to freedom of association as protected by *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 110 S. Ct. 2729 (1990) and *Elrod v. Burns*, 427 U.S. 347, 96 S. Ct. 2673(1976).

44. Defendants' actions also violated Nohelty's right to due process of law under the Fourteenth Amendment to the Federal Constitution by denying him a right to a fair and impartial pre-termination hearing (i.e., because the defendants had pre-determined to terminate Nohelty's employment).

45. Defendants' actions also violated Nohelty's rights to due process of law under the Fourteenth Amendment because their decision to prosecute these charges without probable cause and to terminate Nohelty's current and prospective employment was an arbitrary and capricious exercise of their power.

46. Nohelty's alleged misconduct did not constitute "cause for termination" as that term is used in the employment agreement.

WHEREFORE, plaintiff respectfully prays that this Honorable Court conduct a trial on the merits of this case and enter a judgment against all defendants, jointly and severally and individually in an amount in excess of $50,000.00 plus costs and reasonable attorney's fees.

## II    BREACH OF CONTRACT

47. Plaintiff realleges all of his allegations contained in paragraphs 1-46 above as his allegation for this paragraph and said allegations are hereby incorporated by reference.

48. The facts alleged above and incorporated by reference herein demonstrate that there was not cause to terminate Nohelty's then current employment because:

- The charges preferred by the defendants were false and without probable cause to believe that Nohelty was guilty of any cause for termination

52. The contract extension was a legally valid and binding contract on the plaintiff and the district/ the BOE.

53. At all times prior to defendants' actions, plaintiff was ready, willing and able to perform all duties required under the contract extension.

54. Defendants' actions as pled above demonstrated their intent to repudiate the contract extension and to not perform their obligations required by said contract extension.

55. Defendants' actions constituted an anticipatory breach of the contract extension.

56. As a direct and proximate result of defendants' actions, plaintiff lost the salary and benefits that he was entitled to under the contract extension.

WHEREFORE, plaintiff respectfully prays that this Honorable Court conduct a trial and enter judgment in favor of the plaintiff and against the district and the BOE and thereafter, assess all damages in the plaintiff's favor as is established by the evidence.

### COUNT IV- PETITION FOR COMMON LAW WRIT OF CERTIORARI

57. Plaintiff realleges all of his allegations contained in paragraphs 1-56 above as his allegations contained in this paragraph and said allegations are hereby incorporated by reference.

58. Under *Stratton v. Wenona School District # 1*, 133 Ill. 2d 413, 551 NE2d 640 (1990), the defendants' decision is reviewable via a Petition for a Common Law Writ of Certiorari, which is an administrative review type proceeding.

59. The defendants' decision to terminate Nohelty's employment and/or the contract extension is against the manifest weight of the evidence and/or is arbitrary, capricious and unreasonable for the following reasons:

- The charges contained in the Amended Bill of Particulars were false in that plaintiff had never even received a reprimand for anything prior to the time that the charges were filed;

## COUNT V- **RETALIATORY DISCHARGE**

62. Plaintiff realleges all of his allegations contained in paragraphs 1-61 above as his allegations contained in this paragraph.

63. The individual defendants terminated Nohelty's employment contract and his employment with the district in retaliation for Nohelty's political alignment with the prior board majority and in retaliation for his refusal to resign his employment as demanded by defendant Anderson in violation of Nohelty's rights under the First and Fourteenth Amendments to the Federal Constitution.

64. The individual defendants' actions violated the clearly established public policies of firing a public employee due to his political affiliation and the use of their governmental policies in an arbitrary, capricious and unreasonable manner to break a valid and binding contract that was approved by the predecessor board.

WHEREFORE, plaintiff respectfully prays that this Honorable Court enter judgment in his favor and against the defendants, jointly and severally and individually in an amount in excess of $50,000 plus costs.

Respectfully submitted,

Steven Glink

Law Offices of Steven Glink, # 16602
Attorney for Plaintiff
3338 Commercial Avenue
Northbrook, Illinois 60062
847-480-7749 (voice)
847-480-9501 (facsimile)
E-Mail: steve@educationrights.com

-11-



**Lincolnwood School District 74**

Marvin Garlich Administration Building
6950 N. East Prairie Road
Lincolnwood, IL 60712
Main 847-675-8234 :: Fax 847-675-4207

BOARD OF EDUCATION
David G. Koder
*President*
Richard Ruderman
*Vice President/Secretary*

Dr. Michael G. Davros
Darlene Fourlas
Amy Frankel
Georjean Hlepas Nickell
Alan Perl

ADMINISTRATION
Mark A. Klaisner
*Superintendent*
Dr. Susan Brandt
*Assistant Superintendent*
Virginia Clark
*Business Manager*

## ASSISTANT SUPERINTENDENT FOR BUSINESS CONTRACT

It is hereby agreed between the Board of Education of School District 74, Cook County, Illinois, hereinafter referred to as the "Board," and **KEVIN NOHELTY,** hereinafter referred to as the "Assistant Superintendent for Business."

## WITNESSETH:

### A.   EMPLOYMENT AND COMPENSATION

1. The Board hereby employs the Assistant Superintendent for Business for the period beginning July 1, 2010 and ending June 30, 2011. The administrator's work year shall consist of 260 days.

2. The base salary for said administrator for the twelve-month period beginning July 1, 2010 will be $158,000.00

3. In addition to the above salary, the Board of Education shall calculate and pay on behalf of the Assistant Superintendent for Business all employee contributions to the Illinois Teachers' Retirement System (TRS, as required by section 151.1 of the Illinois Pension Code (Ill. Rev.Stat. Ch. 108 ½, 516-152.1 as amended by P.A. 82-1008) and Teachers Health and Security Fund (THIS). Contributions so picked up shall be treated as employer contributions in determining tax treatment under the United States Revenue Code. The Assistant Superintendent for Business shall not have the option of choosing to receive directly the amount contributed to the TRS and THIS by the Board on his behalf, nor any right or claim to the contributions to the TRS and THIS except as such may subsequently become available pursuant to the provisions of the Pension Code, TRS and THIS rules and regulations. The Board shall also pay the required Assistant Superintendent for Business Medicare tax contribution on the Assistant Superintendent for Business behalf.

### B.   BENEFITS

1. The Assistant Superintendent for Business shall be entitled to twenty (20) days vacation for the 2010-2011 contractual year. Said vacation shall be used during the July 1, 2010 to June 30, 2011 contract year. Unused vacation days will be rolled into sick days the following year.



EXHIBIT
Nohelty A

2. The Assistant Superintendent for Business shall be entitled to seventeen (17) sick days per year during the term of this contract. Unused sick leave shall accrue.

3. The Assistant Superintendent for Business shall be entitled to three (3) personal leave days. Remaining personal leave days will "roll over" as sick days the following year.

4. The Assistant Superintendent for Business shall be entitled to attend one national conference, at the district's expense, per year as approved by the Superintendent.

5. The Assistant Superintendent for Business shall be entitled to term life insurance in the amount of $150,000. In addition, the Board shall contribute $15,000 towards the premium of whole-life insurance policy insuring the life of the Assistant Superintendent for Business, for the beneficiaries of his choosing. The term life and whole-life premiums will be paid annually by the Board on the Assistant Superintendent for Business behalf.

6. The Board shall pay the cost of the Assistant Superintendent for Business annual dues to state, national and civic organizations or professional membership as approved by the Superintendent.

7. The Board shall provide the Assistant Superintendent for Business with, and pay for, full family health, major medical, long-term disability, vision and dental insurance coverage pursuant to the terms and conditions of the group plan(s) in effect in the district at that time. In addition, the Board shall pay annually $900 towards a Health Savings Account on the Assistant Superintendent behalf. This amount will increase annually to match any increase for dependent deductible as set forth by the Internal Revenue Service (IRS).

8. The Assistant Superintendent for Business shall be provided with an annual mileage reimbursement of up to One Thousand Two Hundred Dollars ($1,200). In addition, the Assistant Superintendent for Business shall be reimbursed for job related travel as approved by the Superintendent.

9. The administrator, as a condition of employment, must obtain an annual comprehensive health examination by a physician licensed in Illinois to practice medicine and surgery in all the branches, the cost not to exceed $750 to be paid by the Board. Verification of the ability to perform said position shall be submitted to the Superintendent for review and payment.

C. **DUTIES**

1. The Assistant Superintendent for Business may attend university courses, seminars, or other professional growth activities, serve as a consultant to another district or educational agency, lecture, engage in writing activities and speaking engagements without loss of salary. This is seen as beneficial to both the Assistant Superintendent for Business and Lincolnwood School District 74.

D. **EVALUATION**

1. The Superintendent will annually review and assess the Assistant Superintendent for Business performance in accordance with the District's evaluation plan.

E. **REAPPOINTMENT**

   1. The administrator shall be notified no later than February 1 of the contract year if the Board will not renew the current contract for the next school year.

F. **NOTICE**

   1. All notices under this agreement shall be deemed sufficient if given in writing and sent by mail to the last known address of the Assistant Superintendent for Business or the President of the Board.

G. **APPLICABLE LAW**

   1. The contract is subject to the Illinois School Code, the regulations of the State Board of Education and the Superintendent of the Educational Service Region of Cook County and the policies of the Lincolnwood District 74 Board of Education.

   **IN WITNESS WHEREOF,** Pursuant to the resolution adopted by the Lincolnwood School District 74 Board of Education; this agreement is executed by both parties this sixteenth day of February, 2010.

Dated: February 16, 2010

**Board of Education
Lincolnwood School District 74
Cook County, Illinois**

By: _____
   David G. Keder, President

Attest: _____
   Richard Ruderman, Secretary

**Assistant Superintendent for Business**

Dated: FEB. 18 , 2010

_____
Kevin Nohelty

# LINCOLNWOOD SCHOOL DISTRICT 74
## EVALUATION OF THE ADMINISTRATOR
### 2012

Administrator's Name: _Dr. Kevin Nohelty_

Superintendent's Name: _____ Mark A. Klaisner_____

## PERFORMANCE SCALE

1. = **Outstanding (comment required)**
   The Administrator demonstrates the highest standards. Is characterized as being exemplary. Acts as a role model in this element/category and is recognized as being dynamic and distinct.

2. = **Commendable**
   The Administrative has a high degree of competence and is fully knowledgeable with respect to the element/category. Possesses all of the necessary skills relative of the element/category.

3. = **Satisfactory**
   The Administrator is able to satisfy the requirements of the element/category but the performance is simply adequate or sufficient.

4. = **Needs Improvement (comments required)**
   The Administrator is either barely meeting the minimal requirements of the element/category and/or require improvement to reach a satisfactory level.

5. = **Unsatisfactory (comments required)**
   The Administrator has little or no success in this area. The administrator cannot fulfill the demands or requirements of this element/category.

## I. PERFORMANCE CATEGORIES

### A. Relationship with the Superintendent/Administrative Team

**Performance Score (1 – 5)**

**Elements**

1. Works with Superintendent to advance and promote the District mission and with Administrative team to implement District initiatives.

   _2_

   Comments: _A great deal of work has gone into the new financial software._



EXHIBIT Nohelty B

1

<u>*Performance Score*</u>
*(1 – 5)*

2. Is a contributing member of the Administrative Team.

*2*

Comments: _Kevin is quiet at most_ _meetings but takes the lead on_ _financial matters_

3. Keeps Superintendent informed on issues, needs and operations of the School/District.

*1*

Comments: _Kevin keeps me informed_

4. Offers professional advice to the Superintendent on items requiring Superintendent action. Recommendations are based on thorough study and analyses.

*2*

Comments: _Particularly in Business office_ _matters._

5. Interprets and executes the intent and spirit of Board policy.

*2*

Comments: _We are all working on this._

6. When the Board adopts a course of action or policy, he/she implements the Board's decision in <u>good faith</u> and exerts every reasonable effort to have it succeed to the advantage of the students.

*2*

Comments: _Kevin is great at "Making it_ _happen."_

7. Represents the Board well in conversations with private citizens who may object to Board policies or decisions.

*1*

Comments: _Kevin is very professional_

2

_Performance Score_
_(1 – 5)_

2

8. Seeks and accepts constructive criticism of his/her work.

Comments: _Kevin is very professional_

9. Brings to the Superintendent's attention evaluation information
(pro or con) regarding school personnel when such is warranted.

2

Comments: _Kevin completes the evaluation
of his reports in a timely fashion._

10. Accepts ideas and suggestions advanced by other administrators,
considers merits and advises/reacts accordingly.

1

Comments: _Kevin is a team player and
has a strong network_

11. Keeps the Superintendent advised of changes, innovations and trends
in education that might be applicable to the school or district.

1

Comments: _Kevin keeps me informed_

12. Informs the Superintendent on issues, topics in a timely manner giving
him adequate time to respond after being fully advised of all the facts.

1

Comments: _Kevin keeps me informed_

13. Considers all issues related to the District and informs the Superintendent
accordingly as to issues that have the potential to cast the District or
the School in an (un)favorable light.

2

Comments: _Kevin understands the
politics._

21/13

1.62

*Performance Score*
*(1 – 5)*

B. **_Relationship with the Community_**

### Elements

1. Gains respect and support from the community on the conduct of the school operation.

   Comments: _Kevin has a strong reputation_

   _2_

2. Helps the school system maintain a good image.

   Comments: _Kevin is very professional_

   _1_

3. Develops friendly and cooperative relationships with the media when appropriate.

   Comments: _Not much opportunity for this_

   _2_

4. Participates actively in community life and affairs.

   Comments: _Rotary      Village      Chamber of Commerce_

   _2_

5. Solicits and gives attention to problems and opinions of all groups and individuals.

   Comments: _This is a strength for Kevin_

   _2_

6. Encourages the community to participate in school programs and events.

   Comments: _as he appropriate_

   _2_

4

<u>*Performance Score*</u>
*(1 – 5)*

7. Speaks well in front of large and small groups. Expresses his/her
   ideas in a logical and forthright manner.                          1

   Comments: ___Kevin is very articulate.___
   _____
   _____

8. Can "think on his/her feet" when faced with the unexpected or
   Disturbing turn of events in a large group meeting.                2

   Comments: ___Kevin stays calm in all___
   ___situations___

9. Works effectively with public and private groups.                 2

   Comments: ___Absolutely !___
   _____
   _____

10. Achieves status as a community leader in public education.        1

    Comments: ___Kevin has a great___
    ___reputation___

11. Is responsive in a timely fashion to community inquiries and uses
    phone calls, emails, correspondence, voice mail, and blogs effectively.   2

    Comments: ___This too is a strength for___
    ___Kevin.___

12. Regularly meets with staff from surrounding districts to monitor
    how neighboring communities and their districts respond to
    legislative, educational and economic changes.                    1

    Comments: ___Kevin has maintains an___
    ___excellent network.___

5

*Performance Score*
*(1 – 5)*

13. Maintains membership in professional associations and stays up to date on issues related to the position.        *1*

Comments: _Kevin is an officer in_ _several organizations._

14. Continues to grow professionally through courses, workshops, seminars, and/or book studies.        *1*

Comments: _Kevin not only learns but_ _teaches several courses._

22/14   1.57

## C. *Relationship with Staff and Personnel*

**Elements**

1. Works to develop staff morale and loyalty to the organization.        *2*

Comments: _Kevin models loyalty_

2. Delegates authority and responsibility to staff members appropriate to the position each holds.        *2*

Comments: _Kevin enjoys mentoring his staff_

3. Accepts ultimate responsibility for decisions made by subordinates.        *2*

Comments: _Kevin leads and supports_ _his team._

6

*Performance Score*
*(1 – 5)*

4. Works towards the improvement of staff and personnel relations.

   Comments: _Kevin enjoys working with the staff as a whole._

   **2**

5. Encourages participation of appropriate staff members and groups in planning, procedures and policy interpretation.

   Comments: _when appropriate_

   **2**

6. Supports staff while demanding their best effort.

   Comments: _Kevin sets high standards_

   **2**

7. Evaluates performance of staff members, giving commendation for good work as well as constructive suggestions for improvement.

   Comments: _Kevin expects high levels of professionalism_

   **2**

8. Seeks out the best ideas of competent people before critical decisions are made.

   Comments: _Kevin depends on his Team_

   **1**

9. Works to develop a team spirit among the staff in their approach to education problems.

   Comments: _Kevin depends on his Team._

   **1**

_Performance Score_
_(1 – 5)_

2

10. Makes use of adequate lines of communication with the staff.

Comments: _Kevin communicates well._

2

11. Encourages staff to develop creative solutions to problems.

Comments: _Kevin works with his team(s)_

3

12. Provides orientation for newly appointed staff and makes certain that orientation of all staff is provided.

Comments: _Kevin is part of new staff orientation_

2

13. Follows the practice of decision-making by appropriate subordinates.

Comments: _Kevin works with his team(s)_

$25/13 = 1.92$

## D. _Personal Characteristics_

**Elements**

1. Possesses the health and energy necessary to meet the responsibilities of his/her position.

Comments: _Kevin is very healthy! MARATHON THIS YEAR_

1

8

*Performance Score*
*(1 – 5)*

2. Maintains poise and emotional stability in his/her professional activities.

   Comments: Kevin always has
   appearance of being calm.

   *1*

3. Maintains high standards of ethics, honesty and integrity in all personal and professional matters.

   Comments: ABSOLUTELY

   *1*

4. Earns respect and standing among his/her professional colleagues.

   Comments: Kevin Maintains an
   excellent reputation

   *1*

5. Promotes ideas to which people are willing to listen whether or not they agree with him/her.

   Comments: Kevin is seen as
   an expert in his field

   *1*

6. Seeks new ideas and sources of funding for educational and staff advancement for the advantage of the students.

   Comments: Kevin has some ideas for
   the future

   *2*

7. Keeps abreast of the latest developments in the field of education through participation or attendance at meetings of key professional organizations.

   Comments: Kevin stays current

   *1*

**_Performance Score_**
**_(1 – 5)_**

8. Shares his/her knowledge, experience, and points of view with others in matters of importance to public education.

> Comments: _Kevin is a resource for us and Teaches graduate classes_

2

$\dfrac{10}{8} = 1.25$

## E. **_Organization_**

### Elements

1. Distinguishes between prime problems and trivialities.

> Comments: _Kevin accurately sets priorities._

2

2. Plans his/her own time so that matters of greatest of importance are dealt with thoroughly.

> Comments: _Kevin accurately sets priorities._

2

3. Takes a sound and well considered stand on issues that face the school system.

> Comments: _I see Kevin as an expert._

1

4. Has organized staff so that appropriate decision-making may take place at various and appropriate levels, as contrasted with most decisions being made at the administrator's level.

> Comments: _Makes good use of skills and training of team members._

2

<u>*Performance Score*</u>
*(1 – 5)*

5. Encourages systemization. All significant activities or duties are performed efficiently in a timely basis.

    Comments: _Absolutely – This is a Strength._

    *1*

6. In an annual report or in a series of reports informs the general public concerning the state of the school/District/Program.

    Comments: _Kevin reports regularly @ Board mtgs and is a resource to the future committee_

    *2*

7. Has an organizational plan flexible enough so that research and creativity are encouraged among other employees of the school/District/Program.

    Comments: _It's a difficult field for too much creativity. Certainly, Kevin is flexible_

    *3*

8. Provides democratic procedures in curriculum work, utilizing the abilities and talents of teachers, specialists, and central staff.

    Comments: _Kevin is a team player and supports C + I_

    *3*

9. Administrator recommendations and plans support the educational Philosophy of the board.

    Comments: _Kevin embraces the direction of the board._

    *2*

10. Periodically reviews and reorganizes staff duties or responsibilities to take full advantage of the staff's special competencies.

    Comments: _Kevin values training and organization._

    *2*

11

*Performance Score*
*(1 – 5)*

11. Makes provision for long range planning in all areas of school operation.     3

Comments: _Kevin is part of our Strategic planning_

12. Involves Board, staff and/or community in planning.     2

Comments: _as appropriate_

25/12  2.08

## F. *Leadership, Business and Finance, Curriculum and General Administration*

### Elements     3

1. Shows initiative, creativity and imagination in his/her position.

Comments: _Kevin supports systems_

2. Is regularly visible to all school personnel to give evidence to his/her leadership role.     3

Comments: _Much of this year — Software, Bulthir Foids — has required office time._

3. Operates efficiently as a leader.     1

Comments: _Kevin is very efficient_

4. Reports annually to the Superintendent concerning the adequacy of the educational program.     2

Comments: _Kevin keeps me informed_

12

_**Performance Score**_
_(1 – 5)_

5. Reports annually to the Superintendent concerning the safety of district.          2

   Comments: _Kevin works well with_

   _Jim Caldwell to ensure safety_

6. Place the welfare of the school children before other considerations
   in making his/her recommendations.          1

   Comments: _Absolutely !_

7. Contributes to the development of the budget in cooperation with
   other staff.          1

   Comments: _Kevin owns the budget_

8. Makes recommendations for adequate financial planning.          1

   Comments: _This is Kevins area_

9. Shares with the Superintendent his/her priorities on various budget
   items and amounts.          2

   Comments: _Kevin keeps me informed_

10. Takes the lead in promoting promising avenues of educational
    innovations.          2

    Comments: _Kevin supports the_

    _efforts in C + I_

*Performance Score*
*(1 – 5)*

11. Reviews with the Superintendent the purpose and goals of school and district programs.

2

Comments: _We work as a team_

20/11    1.82

## II.    *OVERALL EVALUATION SUMMARY*

*Average Performance score*
*By Category*

**Categories**

*See performance for each category A-F*

A.  Relationship with the Superintendent and the Administrative Team.

1.42

B.  Relationship with Community

1.57

C.  Relationship with Staff and Personnel

1.92

D.  Personal Characteristics

1.25

E.  Organization

2.08

F.  Leadership, Business and Finance, Curriculum and General Administration

1.82

(Overall Performance Score)
(Average of category A-F performance scores)

1.71

<u>*Performance Score*</u>
*(1 – 5)*

## III. OVERALL COMMENTS

*Strengths:* _____

Kevin is very organized.
He is seen as a leader in his field.
Kevin is a team player and contributes to
and supports his team.

*Areas to be strengthened:* _____

It would be great if the work
load would allow for Kevin to be
more present in the building for positive
reasons.

*General remarks:* Kevin is finishing his second year.
The finances and operations are in good
shape. He has an excellent team.

15

*Performance Score*
*(1 – 5)*

IV.    2012 AMINISTRATOR'S PROFESSIONAL GROWTH AND GOAL(S)

1. SYSTEMIZATION OF OPERATIONS

2. FORMS REPOSITORY

3. FACILITATE FINANCIAL ADVISORY COMM.

4. INVESTIGATE DEBT MANAGEMENT

5. LSSU EVALUATION TOOLS

_____
Signature of Administrator

1/20/12
_____
Date

_____
Signature of Superintendent

1/19/12
_____
Date

16

## PERFORMANCE BASED
## ASSISTANT SUPERINTENDENT FOR BUSINESS CONTRACT

It is hereby agreed between the Board of Education of School District 74, Cook County,

Illinois, hereinafter referred to as the "Board" and DR. KEVIN J. NOHELTY, hereinafter

referred to as the "Assistant Superintendent for Business."

### W I T N E S S E T H:

A.  **EMPLOYMENT AND COMPENSATION**

1.  The Board hereby employs the Assistant Superintendent for Business for the

    period beginning July 1, 2011 and ending June 30, 2014. The Assistant

    Superintendent for Business's work year shall consist of 260 days.

    Employment shall be in accordance with Section 10-23.8a of the Illinois

    School Code and the Assistant Superintendent for Business waives tenure to

    the extent provided herein.

2.  The annual base salary for the Assistant Superintendent for Business for the

    twelve month period beginning July 1, 2011 will be One Hundred Sixty-Two

    Thousand Seven Hundred and Forty Dollars ($162,740.00).

3.  In addition to the above base salary, the Board of Education shall calculate

    and pay on behalf of the Assistant Superintendent for Business all employee

    contributions to the Illinois Teachers' Retirement System ("TRS") as required

    by Section 16-152.1 of the Illinois Pension Code and the Teachers Health and

    Security Fund ("THIS").  Contributions so picked up shall be treated as

    employer contributions in determining tax treatment under the United States

    Internal Revenue Code.  The Assistant Superintendent for Business shall not

    have the option of choosing to receive directly the amount contributed to the

    TRS and THIS by the Board on his behalf, nor any right or claim to the



676840.1

contributions to the TRS and THIS except as such may subsequently become available pursuant to the provisions of the Pension Code, TRS and THIS rules and regulations. The Board shall also pay the required Assistant Superintendent for Business Medicare tax contribution on the Assistant Superintendent for Business behalf.

## B. EVALUATION

This is a performance-based contract, for which basic goals and indicators of performance have been established and agreed to by the parties and are attached hereto and incorporated herein as Exhibit A. It is expected that these goals will be achieved by no later than June 30, 2014, unless otherwise agreed by the Superintendent of Schools and the Assistant Superintendent for Business and approved by the Board due to unexpected circumstances or a decision to delete or substantially modify any of the goals.

As part of the Assistant Superintendent for Business's annual evaluation, the Superintendent and the Assistant Superintendent for Business will review progress toward achievement of goals and make appropriate modifications to goals, subject to review and approval by the Board. The annual evaluation shall take place no later than February 1 of each contract year.

The Board, the Assistant Superintendent for Business and the Superintendent recognize that achievement of goals and improvement of student academic performance is dependent on continued Board and Superintendent support of the goals, including the provision of adequate financial support within available resources. The Board, Assistant Superintendent for Business and the Superintendent also recognize that circumstances beyond the control of the Board, Assistant Superintendent for Business and/or the Superintendent may prevent attainment, or require modification, of any of the goals. In such circumstances or where the Board or the

2

676840.1

Superintendent is unwilling or unable to support the goals, either financially or in principle, the Board, Assistant Superintendent for Business and the Superintendent will modify or delete any of the goals as appropriate.

C.    **BENEFITS**

1.    The Assistant Superintendent for Business shall be entitled to twenty (20) days vacation for each contract year. Said vacation shall be used during each contract year. Unused vacation days will be rolled into sick days the following year.

2.    The Assistant Superintendent for Business shall be entitled to seventeen (17) sick days each contract year during the term of this contract. Unused sick leave shall accrue.

3.    The Assistant Superintendent for Business shall be entitled to four (4) personal leave days each contract year during the term of this contract. Unused personal leave days will "roll over" as sick days the following year.

4.    The Assistant Superintendent for Business shall be entitled to attend one national conference, at the District's expense, each contract year as approved by the Superintendent.

5.    The Assistant Superintendent for Business shall be entitled to term life insurance in the amount of $150,000. In addition, the Board shall contribute $15,000 each contract year towards the premium of whole-life insurance policy insuring the life of the Assistant Superintendent for Business, for the beneficiaries of his choosing. The term life and whole-life premiums will be paid annually by the Board on the Assistant Superintendent for Business behalf.

3

676840.1

6.    The Board shall pay the cost of the Assistant Superintendent for Business annual dues to state, national and civic organizations or professional membership as approved by the Superintendent during the term of this contract.

7.    The Board shall provide the Assistant Superintendent for Business with, and pay for, full family health, major medical, long-term disability, vision and dental insurance coverage pursuant to the terms and conditions of the group plan(s) in effect in the District at that time. In addition, the Board shall pay annually Nine Hundred Dollars ($900.00) towards a Flexible Spending Account on the Assistant Superintendent for Business behalf. This amount will increase annually to match any increase for dependent deductible as set forth by the Internal Revenue Service (IRS).

8.    The Assistant Superintendent for Business shall be provided with an annual mileage reimbursement of up to One Thousand Two Hundred Dollars ($1,200.00). In addition, the Assistant Superintendent for Business shall be reimbursed for job related travel as approved by the Superintendent.

9.    The Assistant Superintendent for Business, as a condition of employment, must obtain an annual comprehensive health examination by a physician licensed in Illinois to practice medicine and surgery in all the branches, the cost not to exceed Seven Hundred and Fifty Dollars ($750.00) to be paid by the Board. Verification of the ability to perform said position shall be submitted to the Superintendent for review and payment.

D.    **DUTIES**

The Assistant Superintendent for Business may attend university courses, seminars or other professional growth activities, serve as a consultant to another district or educational

4

agency, lecture, engage in writing activities and speaking engagements without loss of salary. This is seen as beneficial to both the Assistant Superintendent for Business and Lincolnwood School District 74.

E.   **REAPPOINTMENT**

The Assistant Superintendent for Business shall be notified no later than February 1 of the contract year if the Board will not renew the current contract for the next school year. Compensation and benefits will be discussed annually.

F.   **TERMINATION**

This contract may be terminated by:

1.   Mutual agreement of the parties.

2.   Resignation or retirement, provided however, the Assistant Superintendent for Business gives the Board at least ninety (90) days written notice of the proposed resignation or retirement.

3.   Discharge for cause. "For cause" shall mean any conduct, act or failure to act by the Assistant Superintendent for Business which is detrimental to the best interest of the District, including, but not limited to failure to comply with the terms and conditions of this contract, provided the Board does not act arbitrarily or capriciously. In the event of discharge for cause, the Assistant Superintendent for Business shall be provided with written reasons, notice of hearing, and a hearing before the Board. If the Assistant Superintendent for Business chooses to be accompanied by counsel at such hearing, all such personal expenses shall be paid by the Assistant Superintendent for Business.

676840.1

G.    **NOTICE**

All notices under this agreement shall be deemed sufficient if given in writing and sent by mail to the last known address of the Assistant Superintendent for Business or the President of the Board.

H.    **APPLICABLE LAW**

This contract is subject to the Illinois School Code, the regulations of the State Board of Education and the North Cook Intermediate Service Center and the policies of the Lincolnwood School District 74 Board of Education.

IN WITNESS WHEREOF, pursuant to the motion adopted by the Lincolnwood School District 74 Board of Education, this contract is executed by both parties effective this first day of July, ~~2011~~ *2012* .

Dated: ~~November 3, 2011~~ *January 21, 2012*

**Board of Education**
**Lincolnwood School District 74**
**Cook County, Illinois**

By: _____
      President, Board of Education

Attest: _____ 2/2/12
      Secretary, Board of Education

Dated: ~~November 3, 2011~~ *January 21, 2012*

**Assistant Superintendent for Business**

By: _____
      Dr. Kevin J. Nohelty

6

676840.1



# Lincolnwood 74

### Lincolnwood School District 74

Marvin Garlich Administration Building
6950 N. East Prairie Road
Lincolnwood, IL 60712
Main 847-675-8234 :: Fax 847-675-4207

May 29, 2012

*Via facsimile to 847 480-9501*

Dr. Kevin Nohelty
C/O Steven Glink, Esq.
338 Commercial Avenue
Northbrook, Illinois 60062

Re:     Employment as Assistant Superintendent for Business at Lincolnwood
        School District 74

Dear Dr. Nohelty:

As you know, there have been serious concerns raised regarding your execution of the position as Lincolnwood School District 74's Assistant Superintendent for Business. We have investigated these concerns. In my view, the results of the investigation warrant your immediate dismissal.

I would like to meet with you on Thursday, May 31, 2012 at 2:00 p.m. at the Lincolnwood School District 74 offices at 6950 North East Prairie Road, Lincolnwood, Illinois, to tender you a bill of particulars justifying your dismissal. As I will recommend your immediate termination to the School Board, we will also set a date for prompt hearing before the School Board. You may be represented by counsel on Thursday and at the subsequent termination hearing, if you so choose. Our attorney will be present at both.

If you have any questions, please feel free to contact me at the above telephone number.

Very truly yours,

Dr. Kenneth L. Cull
Interim Superintendent



EXHIBIT
Nohelty
D

BEFORE THE SCHOOL BOARD OF
LINCOLNWOOD SCHOOL DISTRICT 74

| | |
|---|---|
| In re: | ) |
| | ) |
| Kevin J. Nohelty, | ) |
| | ) |
|     Respondent. | ) |

## BILL OF PARTICULARS

The School Board of the Lincolnwood School District 74 (the "District") hereby provides notice of the charges to be presented as just cause to remove Dr. Kevin J. Nohelty ("Respondent") from the position of Assistant Superintendent for Business for the District.

Respondent is charged with the following instances of misconduct and non-performance and the resulting damages and/or unacceptable exposure to risk of damages to the District in that Respondent:

I.    **Misconduct**

    a.  during the summer of 2011, lied and/or recklessly represented to an auditor regarding his accounting responsibilities when questioned about the existence of inaccurate/negative balances on District accounts. The statement to the auditor was made in the presence of Irene Nowak;

    b.  concealed and/or recklessly failed to disclose to the District Finance Committee the District's auditors' Management Report, dated October 27, 2011, outlining deficiencies in the District's internal financial controls to the District Finance Committee;

    c.  concealed and/or recklessly failed to disclose the October 27, 2011 Management Report to the District at any School Board meeting;


EXHIBIT
Nohelty E

d. in a January 17, 2012 letter, responded to a FOIA request to the District seeking "the most recent report on internal controls furnished by your auditor," by misrepresenting that the District was not in possession of such records when it was;

II.    Nonperformance of Significant Responsibilities

a. failed to facilitate implementation of the iVision system or properly address concerns by staff caused by inaccuracies within the iVision system;

b. improperly accounted for District's legal expenditures and used levy funds to pay District's non-tort legal fees;

c. failed to properly account for District funds and to balance the District's books (including accounts and sub-accounts) and financial records;

d. allowed the District to fail to make three scheduled payments a $15m Note to the Northern Trust Co. causing a default under that note;

e. failed to timely advise Northern Trust Co. that on or about December 19, 2011, the District had abandoned the $15m Note;

f. allowed the District to fail to make a scheduled December 1, 2011 payment on a $7m Note, causing a default under that note;

g. provided District residents and School Board members with incorrect/incomplete financial information at a February 2, 2012 District School Board meeting regarding furniture expenditures and failing adequately to account for $1.4m in funds;

h. permitted the District to pay sales tax on superintendent's car despite the applicability of a sales tax exemption;

i. failed to provide sufficient oversight on expenditures by "rubber-stamping" inappropriate or questionable Board Member P-Card expenses;

j. misplaced/concealed/couldn't account for a check representing a state grant payments despite numerous inquiries as to whether the check had been received;

failed to timely convey to the District lawyers notices concerning the alleged improper expenditure of federal grant funds, thus exposing the District to loss of certain appurtenant legal rights;

placed his personal interests ahead of the interests of the District and its constituents by taking vacation just prior to the 2012 vote on the Districts funding referendum; and

failed to respond to the changing demands of the job by failing work harder when job demanded it.

III. **Damages and Unacceptable Exposure to Risk Include:**

a. exposed the District to violation of FOIA (5 ILCS 140/11(j)) and to associated fines;

b. defaults on notes threaten District's superior bond rating;

c. exasperated the community concern regarding the competence of School Board;

d. threatened student activities;

e. exposed the District to loss of funds; and

f. exposed the District to all negative implications of failure to maintain accounting books and records.

Respectfully submitted,

Attorney for Lincolnwood School District 74

Peter S. Stamatis
Law Offices of Peter S. Stamatis, PC
77 West Wacker Drive
Suite 4800
Chicago, Illinois 60601
312.606.0045

BEFORE THE SCHOOL BOARD OF
LINCOLNWOOD SCHOOL DISTRICT 74

In re:                                     )
                                           )
Kevin J. Nohelty,                          )
                                           )
        Respondent.                        )

## AMENDED BILL OF PARTICULARS

The School Board of the Lincolnwood School District 74 (the "District") hereby provides notice of the charges to be presented as just cause to remove Dr. Kevin J. Nohelty ("Respondent") from the position of Assistant Superintendent for Business for the District.

Respondent is charged with the following instances of misconduct and non-performance and the resulting damages and/or unacceptable exposure to risk of damages to the District in that Respondent:

I.      **Misconduct**

   a. concealed and/or recklessly failed to disclose to the District Finance Committee the District's auditors' Management Report, dated October 27, 2011, outlining deficiencies in the District's internal financial controls to the District Finance Committee;

   b. concealed and/or recklessly failed to disclose the October 27, 2011 Management Report to the District at any School Board meeting;

   c. in a January 17, 2012 letter, responded to a FOIA request to the District seeking "the most recent report on internal controls furnished by your auditor," by misrepresenting that the District was not in possession of such records when it was;

1



II.    Nonperformance of Significant Responsibilities

    a.  failed to facilitate implementation of the iVision system or properly address concerns by staff caused by inaccuracies within the iVision system;

    b.  improperly accounted for District's legal expenditures and used levy funds to pay District's non-tort legal fees;

    c.  failed to properly account for District funds and to balance the District's books (including accounts and sub-accounts) and financial records;

    d.  allowed the District to fail to make three scheduled payments due on a $15m Note to the Northern Trust Co. causing a default under that note;

    e.  failed to timely advise Northern Trust Co. that on or about December 19, 2011, the District had abandoned the $15m Note;

    f.  allowed the District to fail to make a scheduled December 1, 2011 payment on a $7m Note, causing a default under that note;

    g.  provided District residents and School Board members with incorrect/incomplete financial information at a February 2, 2012 District School Board meeting regarding furniture expenditures and failing adequately to account for $1.4m in funds; and

    h.  permitted the District to pay sales tax on superintendent's car despite the applicability of a sales tax exemption.

III.   Damages and Unacceptable Exposure to Risk Include:

    a.  exposed the District to violation of FOIA (5 ILCS 140/11(j)) and to associated fines;

    b.  defaults on notes threaten District's superior bond rating;

    c.  exasperated the community concern regarding the competence of School Board;

    d.  threatened student activities;

    e.  exposed the District to loss of funds; and

2

<u>Action as a result of this Closed Session</u>

It was moved by Member Daly and seconded by Member Vranas that based upon the amended bill of particular presented this evening, that there is just cause to terminate the employment of Dr. Kevin J. Nohelty effective immediately and that the performance-based Assistant Superintendent for Business contract dated July 1, 2012 through June 30, 2013 be terminated.

President Anderson submitted the motion to a vote and upon roll call the following vote was recorded:

    *Ayes:*    Members Daly, Vranas, Hlepas Nickell, President Anderson
    *Nays:*    None
    *Absent:*  Members Davros, Fourkas, Koder

It was moved by President Anderson and seconded by Member Vranas to adjourn the Special Meeting of the Lincolnwood School District 74 Board of Education.

President Anderson submitted the motion to a vote and the motion passed by unanimous voice vote at 2:26 a.m.

Respectfully submitted,

_____
President


_____
Vice President/Secretary